# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARGARET M. PERSINGER,

    **Plaintiff,**

-vs-            Case No.  6:15-cv-1377-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) benefits[1] for the specific period, April 30, 2009 (her application date) to November 27, 2010.  Plaintiff was found to be disabled as of November 27, 2010 by the Appeals Council.  *See* R. 648-49.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.   BACKGROUND

### A.  Procedural History

_____

[1]Although Plaintiff alleged disability since October 1, 2005, her eligibility for Disability Benefits expired on December 31, 2005.  R. 143.

Plaintiff filed for SSI benefits on April 30, 2009, alleged an onset of disability on October 1, 2005, due to pain in her lower back, neck post-surgeries, cervical fusions on C5, arthritis, fibromyalgia, depression, anxiety, and thyroid problems.  R. 109-117, 149.  Her application was denied initially and upon reconsideration. R. 36-41, 52-53.  Plaintiff requested a hearing, which was held on January 12, 2011, before Administrative Law Judge Douglas A. Walker (hereinafter "ALJ Walker").  R. 723-35.  In a decision dated January 26, 2011, ALJ Walker issued a partially favorable decision, finding Plaintiff disabled as of May 29, 2010, when he believed that her age category had changed as she turned 50 years old[2].  R. 626-42.  Plaintiff timely filed a Request for Review of ALJ Walker's January 26, 2011 partially favorable decision.  R. 657-58.

On September 25, 2012, the Appeals Council granted Plaintiff's request for review, vacated the hearing decision, found Plaintiff was disabled as of November 28, 2010 (R. 647-50), the corrected date when her age category changed (to closely approaching advanced age), and remanded the case to an administrative law judge to determine–for the period before November 27, 2010 and after the application date of April 30, 2009–Plaintiff's RFC, whether her impairments met listing-level severity, proper evaluation of her mental impairments (including evidence from a medical expert, if necessary), and to obtain input from a VE regarding the effect of her assessed limitation on the occupational base. R. 20; R. 653-56.

Administrative Law Judge Pamela Houston (hereinafter referred to as " the ALJ") held a new hearing on November 19, 2013.  R. 736-61.  In a decision dated February 19, 2014, the ALJ found Plaintiff not disabled for the period between April 30, 2009 and November 27, 2010.  R. 20-33.  Plaintiff timely filed a Request for Review of the ALJ's decision, which was denied on June 17, 2015. R.  11-14.  Plaintiff filed this action for judicial review on August 18, 2015.  Doc. 1.

---

[2]Administrative Law Judge Douglas A. Walker apparently used the incorrect date for Plaintiff's 50th birthday. R. 649, 653.

**B.      Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of lower back and neck pain, fibromyalgia, depression, and anxiety.  R. 149. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative cervical and lumbar disc disease with chronic pain, fibromyalgia, depression, and anxiety-related disorder, which were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 23.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, with the additional restrictions that she could perform no more than frequent reaching with the dominant upper extremity, and no overhead work with either upper extremity; no more than occasional stooping, kneeling, crouching, crawling, and climbing but never ladders, ropes, or scaffolds; she should avoid concentrated exposure to temperature extremes, constant direct contact with vibration, work at heights, and work with dangerous moving machinery; she should be permitted to stand at the workstation up to twice an hour for up to 5 minutes each time; and mentally, she could perform a reduced capacity of tasks that are simple 1-5 steps that can be performed independently after 30 days of training.  R. 25.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work.  R. 32.  Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an envelope addresser, document preparer, and order clerk.  R. 32-33.  Accordingly, the ALJ determined that Plaintiff was not under a disability since April 30, 2009, the date the application was filed.  R. 33.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by determining that she has the RFC to perform a reduced range of sedentary work after failing to include all the mental limitations opined by the state agency psychologist, even though the ALJ assigned great weight to his opinion. Second, she claims the ALJ erred by relying on the testimony of the vocational expert (VE) after posing a hypothetical question that did not adequately reflect her limitations and inaccurately characterizing the testimony of the vocational expert. Third, Plaintiff contends the ALJ erred in evaluating her credibility.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Failure to include certain mental limitations in RFC and hypothetical

Plaintiff argues that the ALJ erred in determining her RFC by failing to properly include Plaintiff's mental limitations[3] as opined by the state agency reviewing psychologist, even though the ALJ assigned great weight to his opinion. The Commissioner argues that the ALJ properly determined Plaintiff's RFC of sedentary work with additional limitations based on review of Plaintiff's entire record.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

---

[3]Plaintiff does not challenge the ALJ's findings regarding her physical limitations.

125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported."  *Crawford v. Commissioner of Social Sec.*, 363 F. 3d 1155, 1161 (11th Cir. 2004).

The ALJ found that Plaintiff had the severe impairments of depression and anxiety-related disorder.  R. 23.  At step three of the sequential evaluation process, the ALJ found Plaintiff did not have a listing-level mental impairment, but she did have mild limitations of activities of daily living, mild difficulties with social functioning, moderate difficulties with concentration, persistence or pace, and no episodes of decompensation.  R. 23-24.  The ALJ found Plaintiff had the RFC to perform limited range of sedentary work with certain exertional and environmental restrictions and "[m]entally, the claimant can perform a reduced capacity of tasks that are simple 1-5 steps that can be performed independently after 30 days of training."  R. 23, 26.  After the ALJ determined that Plaintiff could not perform her past relevant work, the ALJ asked the VE a hypothetical with the same RFC, and the VE testified that the person could perform the jobs of envelope addresser; document preparer; and order clerk. R. 752-54.  Thus, the ALJ determined that Plaintiff was not disabled.  R.

33. Plaintiff contends that the ALJ erred in failing to include all of the limitations opined by the state agency reviewing psychologist, Dr. Weber, in Plaintiff's RFC and the hypothetical to the VE.

In remanding the case for a second hearing, the Appeals Council noted that, although ALJ Walker in the first decision had afforded great weight to the opinion of the State agency psychological consultant Dr. Weber, ALJ Walker had failed to include all of the non-exertional mental limitations opined by Dr. Weber in the RFC. R. 653. The Appeals Council specifically pointed out Dr. Weber's opinion that Plaintiff had "difficulties understanding, remembering, and carrying out detailed instructions; difficulties maintaining attention and concentration for extended periods; and difficulties setting realistic goals" and noted that ALJ Walker had not provided a "rationale for not accepting this portion of Dr. Weber's opinion despite the great weight afforded to that opinion." R. 653-54. Plaintiff contends that the second ALJ (Pamela Houston) hearing Plaintiff's case made the same error in not considering *all* of Dr. Weber's opinion, even though overall she found it to be "persuasive" and accorded it "significant weight" (R. 31). Doc. 21. The ALJ failed to include in the RFC certain limitations noted by Dr. Weber, *i.e.,* she was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independently of others; she would also have difficulties with maintaining attention and concentration for extended periods. R. 573-75. Plaintiff contends that the ALJ failed to provide a reasoned explanation as to why she chose not to include these particular limitations from Dr. Weber in the RFC, pursuant to *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179-81 (11th Cir. 2011) and other cases. Doc. 21. In *Winschel*, the Eleventh Circuit held that the ALJ must account – explicitly or implicitly– for limitations in concentration, persistence, and pace. *Id.*

The Commissioner contends that the ALJ sufficiently determined as part of the RFC that Plaintiff could perform a reduced capacity of tasks that are "simple, 1-5 steps, and can be performed independently after 30 days of training" (R. 25), because the ALJ also gave "significant weight" to the opinions of Plaintiff's treating primary care physician, Dr. Chambers, who diagnosed Plaintiff with anxiety neurosis (stable) and had prescribed her depression medications. Doc. 25 at 10 (citing R. 30). The Commissioner points to the ALJ's discussion of Dr. Chambers' opinion from his "Mental Health Report" (R. 384-87)–Plaintiff had not had a referral for psychiatric/psychological treatment, and that medication had been prescribed for her condition; Plaintiff's mood and affect was normal, thought process, and thought content were all normal, her concentration was good, her orientation was intact, and her memory was good; Plaintiff's behavioral observations were normal; she was a competent individual with regard to Plaintiff's capacity for understanding and memory, sustained concentration and persistence, social interaction, and adaptation; and Plaintiff was capable of sustaining work activity for eight hours a day, five days a week. R. 384-87.

The problem with the ALJ's detailed, but flawed, analysis and the Commissioner's argument is that they view as equivalent the two opinions of a specialist such as Dr. Weber and a general practitioner such as Dr. Chambers, even though the Social Security Regulations require the ALJ to give more weight to the opinion of a specialist. The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion, and "the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). In this case, the opinion of Dr.

Weber, as a psychologist, should have been given more weight than the opinion of a primary care physician such as Dr. Chambers[4] in considering Plaintiff's limitations from anxiety and depression.

Moreover, Dr. Chambers completed the Treating Source Mental Health Report form with single word answers of "good," "normal," or "none" without any detailed information of Plaintiff's specific behavior or functional abilities although the form called for it.  R. 384-87.  In contrast, Dr. Weber completed the SSA's detailed Psychiatric Review Technique and Mental RFC Assessment. R. 559-75.  He listed Plaintiff's diagnoses as Depressive Disorder NOS and Anxiety.  R. 562, 564. In the conclusion section, Dr. Weber indicated Plaintiff would be moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and in the ability to set realistic goals or make plans independently of others.  R. 573-74.

In assessing Plaintiff's mental functional capacity, Dr. Weber opined in narrative form:

Understanding and Memory

Would be able to understand and remember simple instructions, but would have difficulties with more detailed instructions.

Sustained Concentration and Persistence

Would [be] able to complete simple tasks/work procedures and be able to make work decisions but *would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions*

Social Interaction

Would be able to cooperate and be socially appropriate

Adaptation

---

[4]On the Treating Source Mental Health Report, Dr. Chambers wrote for specialty "G.P" or general practitioner. R. 387.

Would be able to react/adapt appropriately to the work environment but would have some difficulties setting realistic goals.

Overall, capable of completing simple tasks on a regular basis from a mental standpoint. The claimant is currently treated for depression and anxiety by her PCP. She does mention some [concentration, persistence, and pace] problems in the [activities of daily living] but [the Consultative Examiner] noted no serious impairments. Major physical functional limitations are mainly attributable to a physical condition.

R. 575 (emphasis added). The Commissioner contends that substantial evidence supports the ALJ's mental limitation in the RFC because Dr. Weber's opinion was consistent with the medical evidence of record, including the opinion of the consultative examiner Dr. Kirmani, who concluded Plaintiff was able to make personal and social adjustments, and had the ability to understand, remember, and carry out instructions. R. 31, 488-90.

The Commissioner argues that Plaintiff is citing to limitations from Section I of the Mental RFC Assessment, but the form indicates Section I is only a summary and medical sources should provide an explanation of the degree of limitation for each category and any other RFC assessment information in Section III of the form. R. 573-75. The Commissioner contends that Section III is where the medical source provides a fuller explanation of the claimant's limitations, thus, the ALJ did not need to include the "checkmark boxes from section I in his RFC finding; only the limitations assessed in section III." Doc. 25 at 12. "The Eleventh Circuit has made clear that an ALJ's RFC assessment must incorporate limitations that, when viewed in light of the whole record, appropriately reflect the PRT findings." *Bowman v. Commissioner*, No. 6:13-cv-614-Orl-31TBS, 2014 WL 4059140, *4 (M.D.Fla. July 28, 2014) (citing *Winschel*).

In this case, although the ALJ included in the RFC a limitation to "simple 1-5 step" tasks that "can be performed independently after 30 days of training," she failed to include the other limitations that Dr. Weber opined, that Plaintiff was moderately limited in "maintaining attention and concentration for extended periods" and in "complet[ing] a normal workday and workweek without

interruptions from psychologically based symptoms and in performing at a consistent pace without an unreasonable number and length of rest periods." R. 573-75.

The ALJ's failure to include as a limitation in the hypothetical Plaintiff's moderate limitation the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was error, and the decision was not based on substantial evidence in that regard. The ALJ failed to discuss these limitations and failed to include them in the hypothetical to the VE, which was error. *See Winschel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."). At Step 5 of the sequential evaluation process, "only an ability to do full-time work will permit the ALJ to render a decision of not disabled." *Kelley v. Apfel,* 185 F.3d 1211, 1214-15 (11th Cir. 1999) (citing Social Security Ruling 96-8p, stating that the issue at step five is whether the claimant has the residual functional capacity to perform work on a "regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule").

It is telling that the ALJ modified the original hypothetical to ask the VE if "the individual was unable to complete a full workday more than twice a month . . . [w]ould that eliminate jobs?" R. 756. In response, the VE testified that it would. R. 756 ("[A] new hire who had not accrued time off and was still taking that time off . . . would likely lose their job."). In other words, a moderate limitation in "completing a normal workday or workweek without interruptions from psychologically based symptoms" would preclude the other jobs in the national economy that the VE had listed. However, the ALJ chose to omit this limitation from the RFC, and the ALJ relied instead on the original hypothetical that omitted this limitation, in order to find that Plaintiff was not disabled. R. 25, 32-33.

In addition, although Dr. Weber also opined Plaintiff would have difficulties with maintaining

attention and concentration for extended periods (R. 575) and would be moderately limited in "performing at a consistent pace without an unreasonable number and length of rest periods (R. 573)," the ALJ failed to include a moderate limitation specifically in *pace* in the hypothetical to the VE. Although Dr. Weber did discuss the three moderate limitations from the first page of the Mental RFC Assessment (R. 573)- Section I   (summary conclusions) in the functional capacity assessment of Section III, he did not expand on the moderate limitation on page 2– "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  R. 574. Additionally, as Plaintiff points out, the ALJ did not include in the RFC the limitation that Dr. Weber *did* discuss in the narrative in Section III (functional capacity assessment) from Section I–in the ability to "set realistic goals," even though Dr. Weber opined Plaintiff would be moderately limited in adaptation and "would have some difficulties setting realistic goals."  R. 574-75.

Moreover, a limitation to "simple 1-5 step" tasks that "can be performed independently after 30 days of training," does not adequately account for limitations in "attention and concentration for extended periods," *i.e.,* persistence, or pace.  Pursuant to the Eleventh Circuit's holding in *Winschel*, the ALJ is required to account for Plaintiff's limitation in pace and persistence, as well as her limitations in concentration, 631 F.3d at 1181, and "the ALJ should have explicitly included the limitation in [her] hypothetical question to the vocational expert." *Id.*  The ALJ did not include Plaintiff's limitations in extended attention and concentration for extended periods, *i.e.*, persistence, and pace in the hypothetical to the VE; therefore, her decision was not based on substantial evidence. *Cf. Jarrett v. Commissioner of Social Security*, 422 F.App'x 869, 871 (11th Cir. 2011) (unpublished opinion) (holding that the ALJ's inclusion in the hypothetical question of a limitation to "understand, remember, [and] carry-out simple . . . tasks and *concentrate for brief periods of time*" adequately accounted for the ALJ's finding that claimant had moderate difficulties in concentration, persistence,

and pace).  As other courts have found, there is a distinction between concentration and pace, which would be relevant in Plaintiff's case, where the ALJ found Plaintiff capable of performing other work in the economy in jobs such as an envelope addresser, document preparer, and order clerk ( R. 32-33), all of which arguably would be affected by a failure to maintain persistence and pace.  *See*, *e.g.*, *Gholston v. Colvin*, No. C14-2064, 2015 WL 3687462, *3 (June 11, 2015)(vocational expert testified that an individual would not be able to do the jobs of document preparer, order clerk, and addresser if there were regular failings to maintain persistence, concentration and pace thirty percent of the time).  Appellate courts in other circuits have found that including a limitation to "simple" tasks does not necessarily account for limitations in pace.

In *Mascio v. Colvin*, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."  780 F.3d 632, 638 (4th Cir. 2015) (vocational expert testified the plaintiff could perform jobs of office helper, order caller, and warehouse checker).  "The ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id*.  In *Ramirez v. Barnhart*, the administrative law judge included a limitation to "one to two step tasks" in the hypothetical question posed to the vocational expert, similar to the ALJ's hypothetical to "simple 1-5 step tasks" in this case, but failed to account for limitations in pace.  372 F.3d 546, 554 (3d Cir. 2004).  The court in *Ramirez* found such a limitation did not take into account deficiencies in pace because many "employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but *not over an extended period of time*."  *Id*.  If the plaintiff often suffered deficiencies in pace, and this had been included in the hypothetical to the vocational expert, the court wrote, the vocational expert may have changed her answer as to whether there were other jobs in the economy that plaintiff could perform because she

had testified that each of the jobs suitable to the plaintiff (assembler, packer, and inspector) would have daily production quotas and the plaintiff would have to maintain a certain degree of pace to maintain those jobs. *Id.*

The case of *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516-17 (6th Cir. 2010) is similar to the fact in this case. In *Ealy*, the ALJ chose to credit the opinion of one psychologist over another; specifically within that opinion was a conclusion that the individual could "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical." *Id.* However, the ALJ posed hypotheticals to the vocational expert that omitted the pace-based restriction and the Court held the ALJ had erred because he had omitted restrictions which were included in an opinion he had chosen to rely on. *Id.* at 517; *Edwards v. Barnhart,* 383 F.Supp.2d 920, 930-31 (E.D.Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of the assembly, packing, and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace.").

In this case, the ALJ gave great weight to the opinion of Dr. Weber, but did not include in the RFC all of the mental functional limitations that Dr. Weber opined, and failed to include them in the hypothetical to the VE. As such, the ALJ's decision is not based on substantial evidence.

## B. Other issues

Plaintiff argues that, although the ALJ indicated that the VE testified to the numbers of jobs available for each of the enumerated positions, the VE did not provide numbers for each of the positions but for an entire occupational grouping. The VE testified that for each of the jobs, the

numbers he gave were for "the entire occupational grouping" because "the Department of Labor stops counting jobs based upon truly a DOT number [for] a number of years ago." R. 757.  On remand, the ALJ will clarify with the VE the numbers of jobs available in the occupations listed as other work in the national economy.

Plaintiff also argues that the ALJ properly failed to adequately assess the claimant's credibility when she suffered from pain caused by cervical and lumbar spine impairments.  The ALJ found "[a]fter careful consideration of the evidence . . . that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to November 28, 2010, for the reasons explained in this decision." R. 26. Plaintiff argues the ALJ's credibility determination does not offer enough reasoning to support the ALJ's determination that Plaintiff is not credible and is akin to  a "template" credibility finding.

Plaintiff argues that she continually complained of pain, and her physicians noted that she experiencing pain during the physical examinations.  She also argued that there is objective evidence supporting her claims of pain, including an August 31, 2009 MRI of the lumbar spine revealing a small central and left foraminal focal protrusion at L4-5 with the disc indenting the thecal sac and abutting the L4 nerve root;  osteoarthropathy at L4-5 causing foraminal stenosis; mild disc diffuse annular bulge abutting the thecal sac and descending S1 nerve roots bilaterally at L5-S1; and bilateral foraminal stenosis at L5-S1 at L5-S1. R. 502, 504, 598. She also cites a September 18, 2009 MRI of the cervical spine revealing mild retrolisthesis of the C6 over C7 vertebra; moderate diffuse annular bulge with medium sized right paracentral protrusion and posterior osteophytes of intervening disc indenting the thecal sac and compressing the thecal sac and compressing the right exiting C7 nerve root; moderate bilateral uncinated process hypertrophy at C6-7 impinging on the neural formina; a medium sized central focal protrusion of C4-5 partially obliterating anterior subarachnoid space;

anterior osteophytes/large extrusion at this C4-5 level indenting the pharynx; a small central focal protrusion of C2-3 and C3-4 indenting the thecal sac; and medium sized central extrusion of C7-T1 disc indenting the thecal sac. R. 531, 550, 596-97.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

On remand, the ALJ will hold a new hearing and assess Plaintiff's credibility consistent with the Eleventh Circuit case law and the applicable Social Security Regulations.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. Accordingly, it is **ORDERED** that the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), is **REVERSED** and **REMANDED**.   The Clerk of the Court is **DIRECTED** to enter judgment, and, thereafter, close the file.

**DONE and ORDERED** on July 29, 2016.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE